CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 18 2014

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UHURU' SEKOU OBATAIYE-ALLAH, | CASE NO. 7:14CV00159 |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| HAROLD CLARK, ET AL., | By: Glen E. Conrad |
| | Chief United States District Judge |
| Defendant(s). | |

Uhuru' Sekou Obataiye-Allah, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that officials at Red Onion State Prison deprived him of protected liberty and property interests in connection with a cell search and subsequent disciplinary charge for possession of a weapon. The defendants have filed motions for summary judgment, asserting that plaintiff's claims are barred either because he failed to exhaust available administrative remedies or because his allegations state no viable constitutional claim. After review of the record, the court concludes that while material disputes remain as to whether plaintiff was prevented from properly exhausting administrative remedies, defendants are entitled to judgment as a matter of law because plaintiff's allegations, even accepted as true, fail to state any constitutional claim on which plaintiff could be entitled to relief under 1983.[1]

## I. BACKGROUND

Plaintiff's complaint alleges groups of constitutional and state law claims related to the alleged following incidents:

A. During a fire drill on December 6, 2013, plaintiff was forced to go outside in the freezing rain for 20-25 minutes, kneel for over an hour on a hard floor, and strip in front of other offenders, and was subjected to sexual and racial comments;

---

[1] Defendants have offered affidavits and documentation in support of their motions for summary judgment on the merits of plaintiff's claims. The court has considered only the allegations in plaintiff's pleadings, however, in reaching the conclusion that defendants are entitled to judgment as a matter of law.

B.  On December 6, 2013, plaintiff was placed in a strip cell without a mattress or clothing for twenty-four hours, and he was denied a complaint form;

C.  On December 7, 2013, plaintiff's property (electronics, address/phone books, law books, personal and legal mail, sheets of paper, pens, and envelopes) was confiscated and not returned, and he was denied a complaint form;

D.  On December 7, 2013, plaintiff was falsely charged with possession of contraband for having a weapon in his cell, reclassified as security Level S, and moved to long-term segregation;

E.  On December 9, 2013, plaintiff was moved to segregation and denied his property (clothes, pillow, socks, boxers, sheets, and blankets);

F.  On December 13 and 14, 2013, plaintiff was threatened and retaliated against for filing grievances by being denied outside recreation, being given food that tasted contaminated, and being denied clean laundry for a month;

G.  The grievance coordinator (Defendant J. Messer) often refused to process grievances or made them disappear to protect guards and hinder plaintiff's lawsuits;

H.  On December 16, 2013, during a disciplinary hearing, plaintiff was denied photocopies of a weapon found in his cell and was denied a fair and impartial hearing;

I.  Plaintiff notified Internal Affairs that he was in fear of his safety and life at Red Onion after he was accused of trying to have the Red Onion warden killed; nevertheless, he was moved back to Red Onion on March 19, 2014;[2]

## II. DISCUSSION

### A. Exhaustion of Administrative Remedies

Under 42 U.S.C. § 1997e(a), a prisoner cannot bring a civil action concerning prison conditions until he has first exhausted available administrative remedies. Jones v. Bock, 549 U.S. 199, 211 (2007) ("unexhausted claims cannot be brought in court") (citing Porter v. Nussle,

---

[2] The defendants grouped plaintiff's allegations as Claims A through I, designations which the court has also adopted. The court notes that the complaint joins multiple claims against multiple defendants with no regard for the restrictions of Rules 18 and 20 of the Federal Rules of Civil Procedure. Under Rule 18(a), which governs joinder of claims, a plaintiff may bring multiple claims, related or not, in a lawsuit against a single defendant. However, in order to name other defendants in the same lawsuit, the plaintiff must satisfy Rule 20(a)(2), which governs joinder of parties. Rule 20(a)(2) permits joinder of multiple defendants only where the right to relief asserted against them arises out of the same transaction or occurrence and concerns a common question of law or fact. On its face, plaintiff's omnibus complaint does not comply with either of these rules.

2

534 U.S. 516, 524 (2002)). Exhaustion "means using all steps that the [prison's procedure] holds out, and doing so properly (so that the [prison] addresses the issues on the merits)." Woodford v. Ngo, 548 U.S. 81, 90 (2006). An "untimely or otherwise procedurally defective administrative grievance" does not comply with § 1997e(a). Id. at 83-84. While nonexhaustion under the PLRA is an affirmative defense, Jones, 549 U.S. at 212, a prisoner may survive summary judgment on this ground by demonstrating that the grievance system was not "available" to him—by stating "facts showing that he was prevented, through no fault of his own, from availing himself of that procedure." Graham v. Gentry, 413 F. App'x 660, 663 (4th Cir. 2011) (unpublished) (citing Moore v. Bennett, 517 F.3d 717, 725 (4th Cir. 2008)); Makdessi v. Clarke, No. 7:11cv262, 2012 WL 293155, at *2 (W.D. Va. Jan. 31, 2012) (noting court's obligation "to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials" and authorizing summary judgment for nonexhaustion only if defendants "show that the evidence is so one-sided that no reasonable factfinder could find that [the prisoner] was prevented from exhausting his administrative remedies") (citations omitted)).

An inmate in the Virginia Department of Corrections ("VDOC") meets the § 1997e(a) requirement by pursuing his claim through each level of the VDOC's regular grievance procedure, including available appeals. First, the inmate must attempt to resolve his complaint informally with staff, typically by filing an informal complaint form, which prison staff must answer in writing within fifteen days from receipt. Then, the inmate initiates a regular grievance by submitting the grievance form, with his informal complaint attached, within thirty days of the event at issue. If the responding official determines the grievance to be "unfounded" at Level I, for full exhaustion, the inmate must appeal that holding to Level II, the regional administrator, and in some cases, to Level III. A regular grievance rejected at intake (as untimely filed or for

3

Case 7:14-cv-00159-GEC-RSB   Document 81   Filed 12/18/14   Page 3 of 17   Pageid#: 615

other reasons) is promptly returned to the inmate with the deficiency noted. To complete proper exhaustion, the inmate must correct the deficiency and resubmit the grievance. He may also appeal the intake decision, but this procedure does not take the place of filing a proper grievance.

Defendants agree that plaintiff exhausted administrative remedies as to Claims C, D, and H. They assert that they are entitled to summary judgment under § 1997e(a) as to plaintiff's Claims A, B, E, F, G, and I, based on evidence that he failed to properly exhaust the issues raised in these claims.

Defendants submit an affidavit from the grievance coordinator, who states that plaintiff never filed any regular grievance concerning the allegations in Claims A, E, and G. Defendants' evidence also shows that between December 2013 and June 2014, plaintiff filed thirteen informal complaints and twenty regular grievances. They submit that these filings belie plaintiff's assertion that officials denied him access to the forms used to pursue such remedies.

Plaintiff offers evidence that in the period after each of these incidents, he filed inmate request forms, emergency grievances, and letters about his ongoing difficulties in obtaining informal complaint forms.[3] He alleges that he often resorted to obtaining forms from other inmates, when supervisory officers refused his request for forms. Plaintiff also points to the Red Onion policy that officers should attempt verbal resolution of an inmate's complaint and provide him with forms only as a last resort. In addition, plaintiff submits evidence that when he could not obtain informal complaint forms, he submitted handwritten notes about his complaints in lieu of forms. (See, e.g., Case No. 7: 14CV00016, ECF No. 2-1, pp. 4, 7-8.)

---

[3] Plaintiff has moved (ECF No. 7) to incorporate by reference the grievance documents he filed in No. 7:14CV00016. Most of these records involve events from 2012 and earlier periods in 2013. Moreover, plaintiff has not identified any specific items from that action on which he wishes to rely in this case, as the court directed. Nevertheless, the court has carefully reviewed those filings and, to that extent, grants plaintiff's motions to incorporate these documents by reference. The following documents from No. 7:14CV000016 that appear to relate to the claims in this action are ECF No. 2-1, pp. 4-8; ECF No. 11-6 ("Declaration"); and ECF No. 11-7 (letters and grievance documents).

4

The court does not find the evidence on exhaustion to be so one-sided that a reasonable factfinder could not accept as true plaintiff's evidence that he attempted to comply fully with the exhaustion requirement and was prevented from doing so. Because material facts remain in dispute over the availability of the required remedy forms within the relevant time frames, the defendants are not entitled to summary judgment under § 1997e(a) as to Claims A, E, and G.

It is undisputed that plaintiff filed regular grievances about Claims B, F, and I. Defendants assert that after each of these grievances was rejected at intake, plaintiff was instructed to correct the intake deficiency and resubmit the grievance. The noted deficiencies were failure to attach the informal complaint to the grievance form (Claim B); submission of the regular grievance to the regional office instead of the Red Onion grievance office (Claim F); and including more than one issue in the grievance (Claim I). Instead of correcting these deficiencies and resubmitting the grievance, plaintiff mailed the rejected grievance directly to the regional office, explaining why he believed the intake decision was incorrect. The intake decisions were upheld.

Plaintiff asserts that because the informal complaint forms were never returned to him, he could not attach them to his regular grievances regarding Claims B and F. Taking this evidence in the light most favorable to plaintiff, the court finds a material dispute of fact that precludes summary judgment under § 1997e(a) on these claims.

Finally, a reasonable factfinder reviewing plaintiff's regular grievance about Claim I, dated June 15, 2014, could find that, contrary to the grievance coordinator's response, it focuses on one issue: plaintiff's desire to be transferred away from Red Onion. He states several reasons for this transfer request—because he believes Red Onion officials will retaliate against him as an inmate accused of trying to have the Red Onion warden and other VDOC officials killed and

5

because he does not feel secure, given an incident when Red Onion officers beat him while he was shackled and handcuffed. Based on this evidence, the court concludes that plaintiff made a good faith effort to properly complete the regular grievance procedure, but was prevented from doing so through no fault of his own—by the grievance coordinator's characterization of his allegations. Therefore, defendants' motions for summary judgment under § 1997e(a) fail.

## B. FAILURE TO STATE ANY CONSTITUTIONAL CLAIM

Defendants also move for summary judgment on the grounds that plaintiff's allegations fail to state any constitutional claims and that they are entitled to qualified immunity against his claims for damages. The court agrees.

An award of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether to grant a motion for summary judgment, the court must view the record and the factual allegations in the light most favorable to the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, the court "need not accept the legal conclusions drawn from the facts . . . [or] accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (internal quotations and citations omitted).

To state a cause of action under §1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). An officer is entitled to qualified immunity against claims for monetary damages for asserted constitutional violations if the court finds that: (1) no constitutional or federal statutory right was violated; or (2) the right was not clearly established

6

such that it would not have been "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Henry v. Purnell, 501 F.3d 374, 377 (4th Cir. 2007) (citation omitted). Under (1), if plaintiff's allegations do not state the elements of any constitutional claim actionable under § 1983, defendants are entitled to qualified immunity against his claims for damages. Id. Moreover, if the court finds that plaintiff's allegations, taken in the light most favorable to him, could not result in a finding that defendants violated his constitutional rights, the defendants are entitled to judgment as a matter of law. Anderson, 477 U.S. at 249-50.

Plaintiff opens each of his nine groups of claims with labels,[4] stating the names of the causes of action he believes arise from each set of facts. The court concludes, however, that the alleged facts, even accepted as true, do not support the elements of any constitutional claims against anyone.

**1. Harsh living conditions**

The Eighth Amendment protects prisoners from cruel and unusual living conditions, but "restrictive and even harsh" conditions that do not inflict harm "are part of the penalty that criminal offenders pay for their offenses against society."[5] Rhodes v. Chapman, 452 U.S. 337, 347 (1981). A claim of unconstitutional conditions requires a two-part showing: that the defendant prison official acted with deliberate indifference (subjective component) to a substantial risk of harm (objective component). Hudson v. McMillian, 503 U.S. 1, 5 (1992). To prove deliberate indifference, the inmate must show that the official was aware that a substantial risk of harm existed, he actually drew that inference, and disregarded the risk by failing to take

---

[4] Plaintiff states that at least two of his claims assert equal protection violations. Because he does not, however, state any facts suggesting that he was treated differently than other, similarly situated inmates, his allegations do not give rise to any such claim.

[5] The Eighth Amendment applies to the States through the Fourteenth Amendment. Wilson v. Seiter, 501 U.S. 294, 296-97 (1991).

7

"reasonable measures" to alleviate it. Farmer v. Brennan, 511 U.S. 825, 835-37(1994). The inmate must provide "evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir.1995) (internal quotations and citations omitted). Allegations of verbal abuse and harassment by guards, without more, do not state any constitutional claim. Henslee v. Lewis, 153 F. App'x 178, 179 (4th Cir. 2005) (citing Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)).

Many of plaintiff's claims allege that he was subjected to harsh living conditions: standing outside in the cold rain for half an hour, kneeling on a hard floor with arms over head for an hour, and stripping naked for a body cavity search in front of other inmates and guards[6] (Claim A); spending a day in a cell without a mattress or clothing (Claim B); being without his personal property items (electronics, legal materials, and writing materials)[7] for several days (Claim C); being denied clothes, pillow, socks, boxers, sheets, and blankets for several hours (Claim E); and being denied outside recreation, showers, and clean laundry for a month, and receiving ill-tasting food occasionally (Claim F). While these temporary conditions were no doubt uncomfortable and even harsh, plaintiff does not state facts showing that any of them caused him serious or significant physical or emotional injury, as required to state a constitutional claim concerning prison living conditions. Shakka, 71 F.3d at 166. Defendants'

---

[6] Plaintiff also asserts that the strip search he underwent on December 6, 2013, violated his unspecified right to privacy. Privacy rights in prison, however, are most often trumped by security needs. It is well established that "correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities." Florence v. Board of Chosen Freeholders of Cnty. of Burlington, __ U.S. __, 132 S. Ct. 1510, 1517 (2012) (upholding constitutionality of "close visual inspection while undressed" for pretrial detainees, because procedure was reasonably related to legitimate security interest in detecting and deterring possession of contraband in detention facility). Plaintiff does not state any facts suggesting that the strip search he underwent was unconstitutional under the standard approved in Florence.

[7] Because plaintiff fails to demonstrate any particular harm to his litigation efforts as a result of the alleged lack of access to legal materials, he fails to state any claim that the loss of his property violated his right to access the courts. See Lewis v. Casey, 518 U.S. 343, 351 (1996).

8

alleged verbal threats, sexual comments, and racial slurs, while unprofessional and abhorrent, do not state any actionable constitutional claim. Henslee, 153 F. App'x at 179.

For the stated reasons, even assuming that plaintiff could prove his factual allegations about his living condition complaints, they do not support any claim of constitutional significance as required for relief under § 1983. Therefore, defendants are entitled to qualified immunity against plaintiff's claims for damages and to judgment as a matter of law. The court will grant their motions for summary judgment accordingly.

**2. Property claims**

Plaintiff's dissatisfaction over losing possession of personal property items, particularly his television, is a recurring theme through many of his claims in this action. After officers searched plaintiff's cell on December 6, 2013, and allegedly found homemade weapons there, in violation of prison policies, they moved plaintiff to segregated confinement—first, in a stripped cell and then in a segregation unit of the facility on a more long-term basis. After officers packed the property from plaintiff's original cell, they inventoried the items. Once plaintiff was in his long-term segregation cell, officers returned to him only the property authorized for possession in that status. Plaintiff claims, however, that his television was confiscated on December 6, 2013, was not included on the inventory list, was not returned to him in segregation, and has disappeared.

An inmate's claim under § 1983 that state officials deprived him of his property without due process involves two questions: whether the inmate had a protected right to the property with which the state interfered; and whether the procedures attendant to that deprivation were constitutionally adequate to prevent wrongful deprivations. Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989) (citations omitted). Prisoners' rights to possess any property in prison

9

are defined by prison property regulations. Board of Regents v. Roth, 408 U.S. 564, 577 (1972) ("Property interests . . . are not created by the [federal] Constitution. Rather they are created and their dimensions are defined by existing rules . . . such as state law[s] . . . that support claims of entitlement" to the property). Because a Virginia inmate's entitlement to possess personal property is always subject to the absolute discretion of VDOC regulators, by state law, plaintiff cannot establish a possessory interest in his personal property (electronics, address/phone books, law books, personal and legal mail, sheets of paper, pens, and envelopes) which is protected by the Due Process Clause. See Rosson v. Weatherholtz, 405 F. Supp. 48, 50 (W.D. Va. 1975). As such, plaintiff had no federal right to procedural protections before officials removed property from his cell that was inconsistent with his housing status.

Plaintiff's federal due process rights also were not implicated by the apparent loss or destruction of his television. "[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984). Section 1983 actions were intended to vindicate federal rights, not tort claims for which there are adequate state law remedies or violations of state laws or regulations, such as the VDOC property procedures. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Violations of state procedural rules or requirements do not implicate any federally protected right. Weller v. Dep't of Social Services, 901 F.2d 387, 392 (4th Cir. 1990).

Under these principles, officials' alleged violations of prison regulations regarding plaintiff's property items do not implicate any constitutionally protected right and so are not actionable under § 1983. Moreover, because plaintiff possessed tort remedies under Virginia

10

state law, see Virginia Code § 8.01-195.3, it is clear that he cannot prevail in a constitutional claim for the alleged loss of his television or other property items.

For these reasons, even assuming that plaintiff could prove his factual allegations about defendants' handling of his property, those facts do not support any claim of constitutional significance as required for relief under § 1983. Therefore, defendants are entitled to qualified immunity against plaintiff's claims for damages and to judgment as a matter of law. Thus, the court will grant their motions for summary judgment.

**3. Disciplinary proceedings and reclassification**

In Claims D and H, plaintiff complains that officials falsely charged him for possession of a weapon, convicted him without due process, and used the conviction as a basis to reclassify him to long-term segregated confinement—Level S. Plaintiff asserts that the weapon must have been planted by officials, because if he had possessed a weapon in his cell, it would have been discovered in previous cell searches. The hearing officer denied plaintiff's request for a photocopy of the weapon at issue, found plaintiff guilty of the charge based on the discovering officers' information, and penalized plaintiff with the loss of personal electronic devices and loss of telephone privileges for 90 days. These alleged events, while no doubt frustrating to plaintiff, do not give rise to any claim of constitutional proportions.

To prevail on a due process claim related to his confinement, an inmate must demonstrate that he was deprived of a protected liberty interest by governmental action. Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). When a punishment or status change does not increase the inmate's term of confinement, protected liberty interests are limited to freedom from forms of restraint which impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995) (holding that disciplinary

11

segregation was not the type of atypical, significant deprivation required to create a protected liberty interest).

Changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). If the status change that an inmate challenges or the disciplinary penalty he received did not impose atypical hardship on him, then he has no federally protected liberty interest, and he is not entitled to federal due process protections before prison officials may implement that status change or impose that penalty. Id. at 486-87. Moreover, an officer's failure to abide by state prison procedural regulations is not a federal due process issue, Riccio v. County of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir.1990), and is, therefore, not actionable under § 1983.

First, plaintiff has no separate § 1983 claim against defendants for bringing the disciplinary charge. Even a false disciplinary charge by itself does not deprive the inmate of due process, if he is thereafter provided with notice and a hearing. See Freeman v. Rideout, 808 F.2d 949, 952-53 (2d Cir. 1986) (finding "the mere filing of [a false] charge itself" does not constitute a cognizable claim under § 1983 if the inmate "was granted a hearing, and had the opportunity to rebut the unfounded or false charges").

Second, plaintiff fails to demonstrate that he had any federal right to procedural protections during the disciplinary proceedings on the weapon possession charge. Plaintiff offers no indication that the disciplinary charge caused him to lose earned good conduct time, and his submissions indicate that the penalty imposed was a temporary loss of privileges. Occasional and temporary loss of privileges is an expected condition of his confinement, rather than the type

12

of atypical hardship required to create a liberty interest that would trigger federal due process protections under the rubric in <u>Sandin</u>. With no liberty interest at stake, plaintiff had no federal constitutional right to federally mandated procedural protections during the hearing or before imposition of the disciplinary penalty. Therefore, plaintiff's allegations in Claim H, of being denied a photocopy of the weapon at issue and not having a fair and impartial hearing, do not implicate any federal right. Moreover, even if state regulations required these procedural protections, officials' alleged violations of state procedural rules during plaintiff's disciplinary proceedings and appeals do not support any constitutional claim actionable under § 1983 claim.

Third, for similar reasons, plaintiff's allegations fail to show that he has a protected liberty interest in avoiding any particular security classification, including Level S. He does not state facts indicating that his status change inevitably lengthened his term of confinement or that its conditions present any atypical difficulty or discomfort when compared to other VDOC confinement categories. As he had no federal interest at stake in the classification process, he was not entitled to federally mandated procedural protections during that process. <u>Sandin</u>, 515 U.S. at 484. If defendants violated state prison regulations somehow in reclassifying plaintiff, such state law violations do not present federal due process issues actionable under § 1983. <u>Riccio</u>, 907 F.2d at 1469.

For the stated reasons, accepting plaintiff's factual allegations as true, his facts do not support any claim that he was deprived of federal due process rights, as required for relief under § 1983. Therefore, defendants are entitled to qualified immunity against plaintiff's claims for damages and to judgment as a matter of law. The court will grant their motions for summary judgment accordingly.

### 4. Grievance procedure violations

Throughout his complaint, plaintiff complains that officials denied him informal complaint forms or grievance forms and that officials did not comply with grievance procedures in various respects. In Claim G, plaintiff accuses the grievance coordinator of refusing to process grievances or making complaint forms or grievances disappear, to help prison officials avoid being sued. Inmates do not have a constitutionally protected right to a grievance procedure. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991). Because a state grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the state prison's grievance procedure is not actionable under § 1983. Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). Therefore, the court concludes that plaintiff's allegations about the grievance procedure state no constitutional claim actionable under § 1983; defendants are entitled to qualified immunity against plaintiff's claims for damages and to judgment as a matter of law; and the court will grant their motions for summary judgment.

### 5. Verbal threats and retaliation

In Claim F, plaintiff asserts that officers threatened to take his property and place him on strip cell; threatened to lie about plaintiff to support another officer's version of events; and told him they would beat him, take his "paperwork," and keep him in segregation for years if he "wr[ote them] up." (Compl. 7.) "[C]laims of retaliatory actions are legally frivolous unless the complaint implicates some right that exists under the Constitution." Adams, 40 F.3d at 75. "That is, plaintiffs must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Id. Because "there is no constitutional right to participate in grievance proceedings," id., plaintiff's claims that the

14

defendants retaliated against him for filing grievances are frivolous. See, e.g., Smith v. Ray, 36 F. App'x 99 (4th Cir. 2002) (affirming the district court's dismissal of prisoner's civil rights claim of retaliation "because access to the grievance procedure is not a constitutionally protected right").

Plaintiff's claims about verbal abuse and threats are also insufficient grounds for a § 1983 claim against anyone. Allegations of verbal abuse and harassment by guards, without more, do not state any constitutional claim. Henslee v. Lewis, 153 Fed. App'x 179, 179 (4th Cir. 2005) (citing Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979). Although plaintiff complains about being denied recreation and clean laundry while in segregation, he does not allege facts on which he could that officers denied him these things because of his exercise of any constitutionally protected right. See Adams, 40 F.3d at 74-75 ("bare assertions of retaliation do not establish a claim of constitutional dimension"). Therefore, the court finds that defendants are entitled to qualified immunity against plaintiff for damages under § 1983 regarding alleged verbal abuse and retaliation and to judgment as a matter of law. The court will grant their motions for summary judgment accordingly.

**6. Failure to protect**

In Claim I, plaintiff complains that the Red Onion investigator knowingly placed him at risk of harm, by assigning him to share a cell with a member of an opposing gang. Plaintiff also complains that even after he told the investigator that he was scared for his life at Red Onion, because he was accused of plotting against staff there, nevertheless, internal affairs returned him to Red Onion.

To support a claim that officials housed him under dangerous conditions, a prisoner must either "produce evidence of a serious or significant physical or emotional injury resulting from

15

the challenged conditions," or "demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) (internal quotations and citations omitted). Plaintiff fails to make any such showing here. He does not describe any serious physical or emotional harm he suffered from being celled with an opposing gang member. Likewise, he does not state facts about any serious physical or emotional harm that officers have caused him since his return to Red Onion, or any substantial risk that they would do so in the future.

For these reasons, plaintiff's facts, taken as true, do not support any claim of constitutional significance as required for relief under § 1983. Therefore, defendants are entitled to qualified immunity against plaintiff's claims for damages and to judgment as a matter of law. Accordingly, the court will grant their motions for summary judgment.

### 7. Supervisory claims

Plaintiff sues prison administrators and higher ranking officers for failing to "do anything about their subordinates' abuse," even after plaintiff and his family wrote to inform them. (Compl. 11.) Plaintiff has no constitutional right, however, to have officials disciplined for their conduct. Gini v. Las Vegas Metropolitan Police Dept., 40 F.3d 1041, 1045 (9th Cir. 1994) ("[t]he police have no affirmative obligation to investigate a crime in a particular way or to protect one citizen from another even when one citizen deprives the other of liberty or property") (citing DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 195-96 (1989)). Moreover, to state a plausible claim against supervisors for the unconstitutional acts of their subordinates, plaintiff has to show that the supervisors played some role in the alleged deprivations. Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (finding "doctrine of respondeat superior has no application" under § 1983). For the reasons stated, however, the

court has found that plaintiff's allegations fail to state any constitutional claim. Therefore, the supervisory defendants, like their subordinates, are entitled to qualified immunity against plaintiff for damages under § 1983 and to judgment as a matter of law. Thus, the court will grant their motions for summary judgment.

**8. State law claims**

In conjunction with each of his constitutional claims, plaintiff asserts many state law claims as well, including vandalism, abuse of process, trespass, negligence, intentional infliction of emotional distress, false imprisonment, assault, and failure to investigate. Section 1983 was intended to protect only federal rights guaranteed by federal law and not to vindicate tort claims for which there are adequate remedies under state law. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Plaintiff's state law claims are thus not independently actionable under § 1983, and the court declines to exercise supplemental jurisdiction over them in this action. See 28 U.S.C. § 1367(c). All such claims will accordingly be dismissed without prejudice.

### III. CONCLUSION

For the reasons stated, the court concludes that defendants are entitled to qualified immunity as to plaintiff's claims for monetary damages under § 1983, and are also entitled to judgment as a matter of law, because plaintiff's allegations, taken as true, state no constitutional claim actionable under § 1983. Further, the court dismisses plaintiff's state law claims without prejudice under 28 U.S.C. § 1367(c). An appropriate order will issue this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants.

ENTER: This 16th day of December, 2014.

_____
Chief United States District Judge

17